## MARZIOU et al v. PIOCHE et al.

In order to authorize the captain of a vessel to pledge or·sell the property of his owners for necessaries, certain facts must be established : The vessel must be in a foreign port; the voyage must be unfinished ; the pledge or sale must be indispensable to enable the ship to complete her voyage.

Ratification by a principal, of the acts of his agent, depends upon the knowledge of those acts on the part of the principal, and where the knowledge is partial, so will be the ratification.

Where a principal expressly gives a power to collect debts for the purpose of providing the means to return advances made by the agent, there would seem to be no doubt of the irrevocable character of the power.

The power being irrevocable, the agent has an indisputable right to institute an action to recover the debts due to his principal, even against the objection of his principal.

But where the debts due exceed the advances due the agent, the principal has a right, if his debtor do not object, to limit the agent's right of recovery to the amount due him for advances; the power being irrevocable only to the extent of the agent's interest.

But if the debtor object, the principal has no right to subject him·to·the costs and expenses of more suits than the parties originally contemplated.

The fact that the first advance was made by express agreement to bear more than legal interest, raises no implication that subsequent advances should do so.

And where particular property was pledged to secure the first advance, the proceeds from a sale thereof must be applied to the payment of that advance.

After appealing from a judgment alone, a party may appeal from an order overruling a motion for a new trial in the same case, provided the latter appeal is taken in time.

Taking distinct appeals may affect the question of costs ; but, subject to this condition, a party may take them, provided no delay is thereby occasioned.

APPEAL from the District Court of the Fourth Judicial District.

In the month of December, 1849, the French ship Java arrived at the port of San Francisco, under the command of Capt. Devaulx, consigned to the defendants. The vessel was seized by the collector of the port, and detained some six months, when she was released. The defendants sold the cargo before the ninth day of July, 1850, and on that day were indebted to Messrs. Marzaud & Co., of Bordeaux, the owners of the ship and part of her cargo, in the sum of twenty-three thousand three hundred and seven dollars. The defendants not being able to pay the amount, in consequence of losses sustained by the fires of May and June, 1850, obtained an extension from their creditors —twenty per cent. payable in three, thirty per cent. in six months, and fifty per cent. in one year. The deed giving this extension was signed "Sl'las Devaulx," whose name stands at the head of the list of creditors, thus : " Capt. Devaulx, ship Java, twenty-three thousand three hundred and seven dollars and twenty-eight cents."

On the eleventh of September, 1850, Capt. Devaulx, instead of returning with his vessel to Bordeax, determined, without any authority from his owners, to undertake a new voyage to Syd-

Marziou v. Pioche.

ney, for coals. For this purpose he borrowed of the plaintiff the sum of four thousand dollars, at five per cent. per month interest, payable upon the return of the Java, or sooner, at the election of Capt. Devaulx. To secure the payment of this loan he assigned, in his own name, to the plaintiffs, the ship, her return cargo, and this debt, besides another ship, the Chateaubriand, and certain claims against the United States. The defendants paid the first and second instalments, and the plaintiffs brought this suit to recover the third and last instalment in June, 1852.

On the trial, the Court below instructed the jury substantially that the captain of the Java had the right to bind his principals by pledging either the ship, her cargo, or this debt, for necessaries, and that the assignment was a valid act. The defendants excepted to the giving of this instruction, and then moved the Court to instruct the jury, that though the captain had power to pledge for necessaries, there was no evidence to go to the jury that the four thousand dollars were borrowed for necessaries; which instruction the Court refused to give, and the defendants excepted.

Subsequent advances were made by the plaintiffs on account of Marzaud & Co., admitted to have been, in amount, eight thousand three hundred and seventy-four dollars, to the ship Chateaubriand, and eight thousand eight hundred and four dollars, a subsequent advance, to the ship Java. Of these advances a portion was credited by the proceeds of the sale of the cargoes. This suit is brought to recover from the defendants their last instalment, to repay plaintiffs the balance due on all the advances and interest, and the plaintiffs wrote to Marzaud & Co. requesting a power from them to collect the last dividend due by Pioche, Bayerque & Co., which power was sent by Marzaud & Co. The defendants answered, denying the power of Devaulx to borrow for account of the Java, under the circumstances; denying his power to assign the debt of twenty-three thousand three hundred and seven dollars; denying the ratification of his acts by Marzaud & Co, and averring payment in full of the four thousand dollars to Marziou & Co.; and payment of the balance of the twenty-three thousand three hundred and seven dollars, by themselves, in France.

The evidence in this case consists principally of a voluminous correspondence, of which the portions passed upon appear in the opinion of the Court. A payment was made by Capt. Devaulx, December 31, 1850, of two thousand and twenty-five dollars and sixty-six cents, and various other payments made to plaintiffs at different times. There appears to have been no agreement as to the rate of interest upon the subsequent advances made by the plaintiffs, and the parties differ to which of them the payments made shall be applied, the plaintiffs claiming five per cent. per month on all the accounts. The jury rendered a ver-

dict in favor of plaintiffs, for eighteen thousand one hundred and sixty-nine dollars and ninety cents, being the full amount of the last instalment and interest, which appears to be based upon an allowance of five per cent. per month upon the general balance due from the plaintiffs from Marzaud & Co.

A motion for a new trial was made by defendants, and overruled, and judgment rendered in the Court below upon the verdict. Defendants appealed from the judgment, and subsequently from the order overruling the motion for a new trial, both appeals coming at the same time before this Court.

*Saunders & Hepburn, and E. Musson,* for Appellants.

Of this debt, two thousand and twenty-five dollars was paid by the defendants to the plaintiff, on the thirty-first of December, 1850, on the order of Devaulx, in their, the plaintiff's favor, leaving the balance due, principal and interest, on the four thousand dollars, on that day, two thousand six hundred and thirty-five dollars. This sum, with five per cent. a month added, from the twenty-first of December, 1850, till March 31, 1852, amounts to four thousand six hundred and fifty-four dollars, on which day, at latest, the plaintiffs received seven thousand five hundred and seventy-two dollars, the proceeds of sales of the cargo of coal, and which was pledged for the payment of this debt. From which it appears, that on the thirty-first of March, 1852, the debt of four thousand dollars was extinguished, principal and interest, leaving a balance in the hands of the plaintiffs, of two thousand nine hundred and eighteen dollars.

But the plaintiffs are creditors of Marzaud & Co., for large advances made to the Java, after her return from Sydney, for which they have no collateral. They are also creditors of Marzaud & Co., for advances to the Chateaubriand, which has left this port for Panama and Europe, and for which they have also no collateral. Moreover, they have no contract in writing, for interest on these advances, and they are therefore entitled to legal interest, and no more. This is their position on the thirty-first of March, 1852.

They state one account with "Mr. Devaulx, captain of the ship Java," in which they charge him with the four thousand dollars advanced on the eleventh of September, 1850, and interest thereon, at five per cent. a month, giving this item no credit, either for the two thousand and twenty-five dollars, paid by the defendants on the twenty-first of December, 1850, on account of the debt of twenty-three thousand three hundred and seven dollars, or for the seven thousand five hundred and seventy-two dollars, proceeds of sales of the cargo of coal received on the thirty-first of March, 1852; although both of the amounts realized were expressly pledged by the shipment of September

11, 1850, as security for the repayment of the four thousand dollars, and interest accruing thereon.

They then state another account with the "ship Java, Captain Devaulx," in which are charged all the disbursements of the ship, for wages and supplies, etc., whilst lying idle in this port—from June 1st, 1851, when she arrived from Sydney, and till March 31st, 1852, when the cargo was sold. They then tack to this bill, five per cent. a month interest, up to March, 1852, on the sum advanced, amounting to eight thousand eight hundred and four dollars, and credit this amount with the seven thousand five hundred and seventy-two dollars, realized from the coal cargo; which is in direct violation of the assignment of September 11, 1850, the proceeds of said cargo being pledged by that instrument to the payment of this four thousand dollars. They then state another account with the "ship Chateaubriand," in which they charge all the advances made to her, with interest added at five per cent. a month, up to March, 1852, amounting to twelve thousand six hundred and twenty-eight dollars, and credit this account with various sums received from Captain Devaulx, and amongst others with two thousand and twenty-five dollars, received from the defendants Pioche & Bayerque, on Devaulx's order,—the same being paid on account of the debt of twenty-three thousand three hundred and seven dollars; which is also a violation of the terms of the assignment of September 11, 1850, said debt of twenty-three thousand three hundred and seven dollars having been pledged, by the terms of said assignment, for the repayment of the four thousand dollars, and interest accruing thereon.

The Court will observe, that the plaintiffs have never had any transactions with the defendants; that the only act which brings the former in privity with the latter, is the assignment of September 11th, 1850, and if this instrument be invalid or unauthorized, the plaintiffs have no title, and no case.

Now, what is this assignment? A loan of four thousand dollars by V. Marziou & Co., to Captain Devaulx, of the ship Java, belonging to Marzaud & Co., merchants of Bordeaux, to secure the payment of which, Devaulx gives in guaranty "the debt due to the Java, by the house of Pioche, Bayerque & Co." This instrument is signed by Devaulx, in his own name. It thus appears that Devaulx has undertaken to transfer property as security for a loan, which, on the very face of the paper containing the transfer, appears to belong, not to him, but to others.

Devaulx, then, has undertaken to assign as his own, and in his own name, what did not belong to him. Accordingly, the defendants objected to the assignment, on the ground that it passed no title; Devaulx having no authority, as master of the ship, to make the transfer, and the plaintiffs having failed to prove any express authority.

1. It is now submitted that the Court erred in permitting the paper of September 11th, 1850, to be read in evidence for the purpose of showing a transfer by Devaulx of the interest of Marzaud & Co., in the debt of twenty-three thousand three hundred and seven dollars; said paper, for any such purpose, being a mere nullity, it appearing on the face of it that the title to the thing transferred was not in Devaulx, but Marzaud & Co. The statement of this proposition is all the argument it needs.

2. That the Court erred in giving the instruction that Devaulx had a right to assign the debt for necessaries, and in refusing the prayer that there was no evidence that the four thousand dollars borrowed were for necessaries.

The first was an error, because it was an abstract proposition of law, utterly unsupported by evidence; and, therefore, calculated to mislead the jury. Gittings v. Hall, 1 Harris v. Johns., 29; Allegres Heirs v. The Maryland Insurance Co., 2 Gill. & John., 161; Evans' Practice, 229.

The second was error, because it would have corrected the misinstruction given, and which was absolutely necessary to prevent the jury from being misled.

As a matter of abstract law, a captain has a right to pledge the cargo for necessaries, but this right does not spring from his position as captain, but from the necessity of the case; and in order to justify it, the vessel must be, first, in a foreign port; second, the voyage must be unfinished; third, the pledge or sale must be indispensable, to enable the ship to complete her voyage; fourth, these facts must be charged in the complaint, and proved on the trial. Gratitudine, 3 Robinson, 210; 213, 216, 217, 306; U. S. Ins. Co. v. Scott, 1, Johnson's Rep., 111; Rucher v. Conyngham, 2 Pet. Ad: Rep., 300, 301; The Packet, 3 Mason, 260, 261; Ross v. The Active, 2 Wash. C. C. Rep., 226, 227, 233, 237; The Fortitude, 3 Mason, 228, 230, 232, 233, 234, 235, 249.

3. For the reasons before given, the Court erred in refusing the further instruction, that to recover on the ground of a right to assign for necessaries, the fact of the necessity should have been pleaded. See, for this position, the authorities before cited.

4. The Court erred in refusing the fifth prayer of the defendants, that the plaintiffs had offered no evidence to prove that Marzaud & Co. had knowledge of the assignment by Devaulx, and so having knowledge, ratified the same.

In order to recover on the ground of ratification by Marzaud & Co., it was necessary for the plaintiffs to establish two propositions; first, that Marzaud & Co., were fully informed of the act of their agent, Devaulx; and second, that being so informed, they ratified said act; " it being a well settled rule that a principal who ratifies the acts of his agent, must be made acquainted with the character of those acts, and unless all the circumstances

are made known to him, the ratification is void." Billings v.
Morrow & Co., January Term, 1857.

Now the best way to "make known" to Marzaud & Co., "all
the circumstances" of the assignment of September 11, 1850, was
to serve them with a copy of the same; but of this there is no
pretence. The next best way was to inform them of the con-
tents of the document. What are they? Devaulx borrows
four thousand dollars from plaintiffs at five per centum·a month,
and gives as collateral:

A debt of twenty-three thousand three hundred and seven dol-
lars, belonging to Marzaud & Co;

The ship Java, belonging to Marzaud & Co;

The ship Chateaubriand, also belonging to Marzaud & Co;

The cargo which the Java is to bring from Sydney; all of
which is given by Devaulx, in his own name, without the au-
thority of his principals, to enable him to undertake a new voy-
age, contrary to their instructions.

Under these circumstances, it is submitted that it was incum-
bent on the plaintiffs, in order to recover on the ground of rati-
fication, not only to prove the act of ratification by them, but to
establish by proof that it was done with a full knowledge of every
fact contained in the assignment, by which alone can they make
it the act of Marzaud & Co.

By an examination of the correspondence, which contains
nearly all the evidence on the subject, the Court will see not
only that Marzaud & Co. did not ratify the act of Devaulx, but
the fact is proved affirmatively, by the plaintiffs' own evidence,
that they were never informed of his assignment to the plaintiffs.

The Court will see at every sentence that Marzaud & Co. never
could have ratified the assignment, because they knew nothing
of it, and had not even a suspicion of its existence. They will
see, also, that while they are informed in driblets of the borrow-
ing of the $4,000, the going to Sydney, the return with coals, and
the use by Devaulx of the two first instalments of the $23,307;
they have never the most remote imagination that the bottoms
of the Java and Chateaubriand have been hypothecated.

It will be seen, also, that the power of attorney sent to the
plaintiffs by Marzaud & Co., to authorize the collection of the
money from Pioche and Bayerque, was sent at the request of the
plaintiffs themselves, made nearly a year after the title accrued
under which they are now claiming the ownership of the debt.

On the case thus made, it is submitted, that there was no evi-
dence to go to the jury to prove a ratification by Marzaud & Co.
It is true, that it is competent for the jury, and the jury alone,
to pass upon all matters of fact, "when evidence, legally suffi-
cient for that purpose is submitted to their consideration; yet
this legal sufficiency is a question of law of which the Court are
the exclusive judges." Davis v. Davis, 7 Har. and Johns., 38, 39;

Riggin v. Patapsco Ins. Co, ibid., 294, 295 ; Cole v. Hebb, 7 Gill. and Johns., 26, et seq.

What then has been done? The Court below, who was to judge of the sufficiency of the plaintiffs' evidence, as a matter of law, to enable the jury to find the fact of ratification, submits the question to them, not only without any evidence to prove it, but in the face of positive and overwhelming testimony to disprove it.

5. The Court erred in refusing to grant a new trial, on the ground that the verdict was against evidence.

Crediting the $4,000 with the $2,025 paid by the defendants to the plaintiffs on the twenty-first of December, 1850, and which was improperly credited to the account of the Chateaubriand, the balance due on that day would be $2,635 ; and computing interest on that sum at five per centum a month for six years and three months, it would amount to some twelve thousand five hundred dollars ; yet the verdict is for $18,169.

And crediting the balance of $2,635 with the proceeds of the cargo on the thirty-first of March, 1852, and the entire debt and interest is largely overpaid, and the verdict should have been for the defendants. It will be contended here, no doubt, as it was in the Court below, that only the net proceeds of the cargo should be credited, and that the account of the Java shows that the expenses of the ship more than set-off the whole amount realized from the coal. The answer to this is, that it appears from the accounts themselves that the advances made to the ship by the plaintiffs were all made after the voyage was performed, and her cargo in port, and have, therefore, no connection with it whatever. Moreover, it appears from the letters of the plaintiffs themselves, that the cargo had been bought and the ship dispatched on the voyage, with the four thousand dollars, and that she arrived in this harbor with little or no debt. The cargo was therefore clear, and the avails of it could go only in the way which was agreed, when the money was loaned which purchased it and brought it into market.

Although this action was instituted in June, 1852, the amended complaint on which the plaintiff went to trial, was not filed till February, 1857 ; that is to say, the plaintiffs, if they are right in this business, have slumbered for nearly five years on a right to recover eighteen thousand dollars from the defendants !

The short moral of this long story is soon told : Devaulx violated his instructions, and instead of sending the Java to China, where his principals had negotiated a credit to enable him to buy a cargo, he sent her to Sydney. He violated instructions in like manner by purchasing the Chateaubriand, and sending her on a passenger voyage to Panama. Both of these adventures have resulted in heavy losses, and the insolvency of Marzaud & Co., merchants in good credit at the time. The plaintiffs, who ad-

vanced on the faith of this credit, seeing they must lose, endeavor, after lying by for several years, to avail of a security which is invalid on its face, and which their own subsequent acts demonstrate that they themselves considered invalid.

The record shows that a motion was made for a new trial, that a statement was made and agreed to, and that on the twenty-first of March, 1857, the motion was denied, and judgment entered.

From this judgment, the defendants appealed.

It is now contended by the respondents, that on this appeal the Court can review questions of law alone, and that questions of fact are not examinable, because the appellants have not appealed in terms, both from the judgment and the order denying a new trial.

1. The first answer to this objection is, that the appeal is taken both from the order refusing the new trial and the judgment. The denial of the new trial, and the rendition of the judgment, were both contained in a single order, made March 21st, 1857, and the appeal is "from the judgment made and entered on the twenty-first day of March, 1857." Now, what was that judgment of March 21st, 1857 ? Not that judgment be entered on the verdict, but that the motion for a new trial be denied, and that judgment be entered on the verdict.

It is certain, therefore, that the appeal is taken from the denial of the motion, as well as the judgment; in other words, from the whole, and not the half of the order.

2. But suppose the appeal is from the judgment alone; it is submitted that the facts are still examinable. To prove the contrary, the respondents have cited the case of Morgan v. Bruce, 1 Code Rep., new series, 364, which decides that, on an appeal from a judgment, questions of law alone are reviewable. This proposition, as there laid down, is not disputed. In that case, there was no statement, and no motion for a new trial, and the Court, therefore, very properly refused to consider the question, that the finding was against evidence.

3. But suppose it does not, and that an appeal from the order denying a new trial, is distinct from, and cannot be covered by the appeal from the judgment. This must be because the appeal from the judgment in nowise affects the order denying the new trial, which being the subject of a distinct appeal, might still be prosecuted independently of, and concurrently with, the appeal from the judgment.

By the terms of the stipulation of April 28th, 1857, filed during the argument, it will be seen that we have done this.

*Gregory Yale and S. Heydenfeldt* for Respondents.

1. The right to re-examine the facts of this case, by this Court, is a jurisdictional question.

As a question of jurisdiction, there ·can be no reversal of a judgment in this Court, unless the judgment is appealed from. A new trial is the re-examination of an issue of fact in the same Court, after a trial and decision by a jury. This Court can have no jurisdiction to review the action of the District Court, in refusing to re-examine the issue of a matter of fact, unless the order refusing the new trial is appealed from. This appeal is taken from the judgment alone, upon the idea, that upon such appeal, " any intermediate order involving the merits, and necessarily affecting the judgment," may be reversed, within the meaning of section six of the act of the nineteenth of May, one thousand eight hundred and fifty-three, concerning Courts of Justice, and within the meaning of section three hundred and forty-four of the Practice Act, and that such an appeal could be taken within sixty-days.

The refusal to grant a new trial is made an express and distinct ground of appeal. An intermediate order can be reviewed upon an appeal from a judgment. One is the subject of a distinct appeal, in connection with an appeal from the judgment, the other, of review, when the judgment alone is appealed from. An intermediate order need not be appealed from. An order refusing a new trial must be appealed from.

The question then is, under the stipulation, whether the party, having already appealed from the judgment, and given notice to that effect, and given his bonds to stay proceedings on the judgment can, at the hearing of the case, when brought on for argument, make another and a distinct appeal, from the order refusing the new trial? If so, he must give a new notice, and file new bonds. He is then in Court on two distinct appeals, in the same case, the second taken before the first is decided, or rather two appeals from two distinct parts of the same case.

No such practice would be tolerated. Where a motion was made by the respondent to dismiss the appeal, on the ground that a defective bond was filed, the Court allowed another appeal, upon filing a sufficient bond. Martinez v. Gallardo, 5 Cal., 155.

The rule is, that a party is not permitted to appeal from different parts of the same case, but must bring up all the points decided, on the first appeal, and unless he does, no second appeal is allowed. This rule is correctly stated in Bridendolph v. Zeller's Exec., 5 Md., 64, 65.

2. As affecting the merits, that the assignment of a chose in action, for money advanced, gives the right to the assignee, to recover in his own name, coupled with an interest not to be divested or affected by transactions between the assignee and debtor, subsequent to the assignment, and notice of the assignment.

The right of an assignee to sue in his own name cannot be

Marziou v. Pioche.

questioned though the debt was assigned as security, and also in consideration, of a covenant not to sue upon the debt. Warner v. Wilson, 4 Cal., 313.

The assignments claimed under all the paper of the eleventh of September, one thousand eight hundred and fifty, by Devaulx, and the power of attorney from Marzaud & Co., both referred to in the complaint, and introduced in evidence.

The mere delivery of a chose in action, upon a good and valid consideration, is sufficient, without a seal, even if it were a specialty. Prescott v. Hall, 17 Johns., 292.

The following cases are referred to under this head : Canfield v. Morgan, 12 Johns., 346; Wheeler v. Wheeler, 9 Cowen, 35, 36; Littlefield v. Story, 3 Johns., 426; Andrew v. Becker, 1 Johns., 531, 532, notes; Buchanan v. Taylor, 1 Addison, 155; Baldwin v. Billenyslay, 2 Vernon, 539, case 483 ; Legh v. Legh, 1 Bos. & Pul., 447 ; 1 Bacon's Abridgment, 385, title "Assignment."

The answer admits the agency of the plaintiffs under the power of attorney referred to in the complaint, as follows :

"They (the defendants) also admit that the plaintiffs were formerly the agents of Marzaud & Co., duly authorized and empowered to collect all moneys due by these defendants to said Marzaud & Co., but they aver that the power of attorney to that effect, heretofore given by said Marzaud & Co., to Henry Mathey, one of the plaintiffs herein, was duly revoked on the thirteenth of January, one thousand eight hundred and fifty-three, and that said plaintiffs have from that date continued to remain unauthorized to receive the same."

This power of attorney, being coupled with an interest, amounted itself to an assignment, and was irrevocable. It was given expressly for the purpose of collecting money from the defendants, to be applied to advances made by the plaintiffs to Marzaud & Co., in aid of Devaulx's individual authority. The attempted revocation about the time that Pioche paid the seven thousand francs in December, 1852, six months after the suit, by a mere letter, not even stating that circumstance, does not invalidate the instrument. Story states the rule, in § 477, on Agency.

This doctrine is recognized by this Court, in Posten v. Rassette, 5 Cal., 469.

3. The defendants are estopped by the deed of July the 9th, 1850, from denying Devaulx's authority to assign the debt to the plaintiffs by the paper of September the 11th, 1850.

The list of San Francisco creditors is given, referring to "Captain Devaulx, twenty-three thousand three hundred and seven dollars and twenty-three cents."

Marzaud & Co. are not enumerated among the Bordeaux creditors.

Upon the execution of this deed, and before the plaintiffs had

any dealings with Devaulx, the defendants treated with him as their creditor, by making the first payment of twenty per cent. to him. After the assignment to the plaintiffs, the defendants recognized him in the same relation, by paying his draft in favor of the plaintiffs, on account of advances for the Chateaubriand, in the sum of two thousand and twenty-five dollars and sixty-six cents.

They now say that "his assigns" have no rights under the deed, after they had treated him themselves as the principal, in the payment of the first and second instalments, to demand payment of the third.

They are estopped from making this declaration, both by deed and by matter *in pais*. They placed him in a position by their own act before the world, as their creditor, and gave him an opportunity to represent himself as such, and to obtain money from the plaintiffs, upon the faith of declarations in their deed, and a course of dealing with him in relation to that deed and the policy of the law, will not permit them now to deny their own acts, upon the faith of which the plaintiffs had relied.

The general rule is stated in 1 Greenl. Ev., § 207 :

" Admissions, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person whose conduct he had thus influenced."

Numerous illustrations of the bearing of this rule are given in 1 Saunder's P. and Ev., under the head of " Admissions;" Smith *v.* Chester, 1 T. R., 655 ; Bass *v.* Clive, 4 M. S., 15 ; Robinson *v.* Yarrow, 7 Term, 455; Porterhouse *v.* Parker, 1 Camp., 82; Haws *v.* Watson, 2 B. & C., 9 E. C. L., 239.

This Court has frequently had occasion to apply the doctrine of estoppel, and in the application made there has been no departure from the plain rule. The following cases from this Court are cited : Hastler *v.* Hays, 3 Cal., 307 ; Tartar *v.* Hall, 3 Cal., 266 ; Redman *v.* Bellamy, 4 Cal., 250 ; Goodman *v.* Scannell, Oct. Term, 1856; Cal. S. N. Co. *v.* Wright, July Term, 1856.

4. The plaintiffs, as assignees, are entitled to recover on the express promise made to them by the defendants, to pay the assigned debt to them.

" This arises," says Cowen, Justice, in Hall *v.* Newcomb, 3 Hill, 273, "from consideration and privity." The rule is laid down in the elementary books.

The acts of Devaulx, as captain, and as general agent of the Java and her cargo, including his disposition of the cargo and freight to the defendants, his extraordinary dealings with them by permitting them to sell his cargo and collect his freight, and in granting them twelve months' time to pay, by deed under seal, without security ; his loan from the plaintiffs, his hypothecation of the debt, his purchase and outfit of the Chateaubriand, her voyage to Panama and Valparaiso, and the voyage of the

Java to Sydney and back; the purchase of her new cargo; his disposition of the cargo, and his disposition of the first two instalments of the debt of the defendants under the deed; and, generally, his conduct, while in California, were ratified and adopted, and again acted upon, by Marzaud & Co., of Bordeaux.

The rule of law in respect to ratification, is stated in Dunlap's Paley, 171, "as an authority may be presumed from previous employment in similar acts, so the same presumption arises from subsequent assent or acquiescence; and a small matter will be evidence of such assent."

In note "O" to the text, same page, as a quotation from Livermore, it is said : "It is not necessary that there should be an express act of ratification, in order to oblige the principal to the performance of the contract, or to subject him to the obligation of indemnifying his agent; but his subsequent assent may be inferred from circumstances which the law considers equivalent to an express ratification."

As Marzaud & Co. are indebted to the plaintiffs in a very large sum, beyond the four thousand dollars, and the interest upon that sum, the defendants, as the debtors originally of Marzaud & Co., and at present debtors to the plaintiffs, they do not stand in a position to call the plaintiffs to an account with Marzaud & Co. At least, unless they had some equity to set up against Marzaud & Co., which they could not enforce against the plaintiffs. Whether the debt is extinguished or not, is a question to be settled between the plaintiffs and Marzaud & Co.

The verdict of the jury passed, affirmatively, upon the questions of indebtedness of Marzaud & Co. to plaintiffs, and of the ratification of the acts of Devaulx, relating to the loan, and of the express promise of the defendants to pay the plaintiffs, after the notice of the assignment; and, negatively, upon the issue of *nul tiel record*, and of payment by the defendants, as matters of fact, directly in issue, upon which there was contradictory evidence, and is conclusive upon these questions.

As between the same parties, it is denied, that, although there was a ratification of the loan, there was not a ratification of the assignment of the debt due from the defendants to secure the loan. And it is contended, that inasmuch as the four thousand dollars' loan has been repaid, the defendants have no right to sue upon the assignment, whether the defendants have paid the Bordeaux house or not.

As between the plaintiff and defendants, it is admitted in the answer, that at the time the suit was instituted, the third instalment of the twenty-three thousand three hundred and seven dollars and twenty-one cents, being the one-half of that sum, due by the terms of their deed, was owing to the Bordeaux house, and that the plaintiff was authorized to receive it. But it is contended, that since the institution of this suit, the authority of

35

the plaintiff, under their letter of attorney, was revoked, by a notice to that effect, bearing date on the thirteenth of July, 1853.

The disputed facts are, then : First, as to the ratification of the assignment by the Bordeaux house; and second, the repayment of the four thousand dollars' loan.

BURNÈTT, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

It is insisted by the learned counsel for the defendant, that the Court erred in giving the first instruction, as it was a mere abstract proposition of law, and as such, though true, had no application to the case, and was, therefore, calculated to mislead the jury; and more especially so, when the Court refused to give the explanatory instruction.

In order to authorize the captain of a vessel to pledge, or sell, the property of his owners for necessaries, certain facts must exist:

1. The vessel must be in a foreign port.
2. The voyage must be unfinished.
3. The pledge, or sale, must be indispensable to enable the ship to complete the voyage.
4. These facts must be charged in the complaint and proved at the trial. Gratitudine, 3 Robinson, 210, 306; United States Ins. C. v. Scott, 1 Johns. R., 111; Bucker v. Conyngham, 2 Peters, Ad. R., 300; The Fortitude, 3 Mason, 228.

There was certainly no evidence to show that the money was loaned in order to enable the vessel to complete her voyage; but the evidence was conclusive that it was loaned to enable her to perform a *new* voyage without the instructions, or consent, of the owners, *at the time.*

But we think this error of the Court could do the defendants no harm, for the reasons hereafter stated. Turner v. McIlhany, Thomas & Co., Oct., 1857.

But it is insisted by the learned counsel for plaintiffs, that the acts of Captain Devaulx were subsequently ratified by Marzaud & Co., after full knowledge.

Most of the testimony consists in the correspondence between Marziou & Co., and Marzaud & Co., and between Consul Dillon and Marzaud & Co. After a careful examination of all the testimony, it seems clear that Marzaud & Co. were fully informed of the debts created by Captain Devaulx, and ratified his acts in creating these debts. But there is no evidence to show that Marzaud & Co. were ever fully informed of the contents of the assignment made by the captain to the plaintiffs. On the contrary, the evidence, taken as a whole, shows clearly that they were not so informed. Consul Dillon, in his letter to Marzaud & Co., under date of January 23, 1851, says :

" As to the funds still in the hands of Messrs. Pioche, Bayerque & Co., they will be transmitted to you directly, excepting the first payment, which must be made about this time, the amount of which has been hypothecated previous to the receipt of your letters, on account of the two-fold expedition of the Java and Chateaubriand."

This is a very clear statement that the *first* payment was hypothecated, and that the other payments were not. No one reading this extract could ever come to any other conclusion. And there is nothing in the letters from the plaintiffs to show that they ever gave Marzaud & Co. any correct notice that the last instalment had been assigned to them by Devaulx. But the tenor of the correspondence, on the part of the plaintiffs, would lead any person to a different conclusion.

The act of creating the debt, and the act of making the pledge, are very different things, and a principal, after full information, might have the best reasons for ratifying the *first*, and for refusing to ratify the *second.* And when the plaintiffs proved, as they did, that Marzaud & Co. ratified the acts of their agent in creating the debts, they did not show that the acts of this agent in pledging the property of his principals, had been also ratified to its full extent.

But the learned counsel for the plaintiffs insist that Marzaud & Co. themselves pledged this debt to the plaintiffs to secure them for all the advances made, including this four thousand dollars, as well as subsequent loans.

The plaintiffs, under date of May 14th and 31st, 1851, requested Marzaud & Co. to send them a power of attorney to collect the last dividends due by P. B. & Co. The power was sent by Marzaud & Co., and in their answer, dated the thirteenth of August, 1851, they say :

" You will have taken care, gentlemen, for every thing necessary to that effect, by finding the surety for your advances on the funds due to us by Messrs. Pioche, Bayerque & Co., which will be easy for you to collect without impediment, by virtue of the power which we send you; praying that when you will be duly secured, you will forward our surplus in good value."

This language, taken in connection with that found in the letters of plaintiffs, and also in the other letters of Marzaud & Co., shows clearly that it was the intention of Marzaud & Co. to give the plaintiffs a power coupled with an interest, and, therefore, irrevocable.

" But, where an authority, or power, is coupled with an interest, or when it is given for a valuable consideration, or when it is a part of a security, then, unless there is an express stipulation, that it shall be revocable, it is, from its own nature and character, in contemplation of law, irrevocable, whether it is

expressed to be so upon the face of the instrument conferring the authority or not." Story on Agency, § 477.

Where an agent, for the collection of debts, or the sale of property, advances money to his principal before he collects the debt, or sells the property, it must be presumed, from the nature and character of the transactions, that the parties intend the agent shall have a lien for his advances, unless there is "an express stipulation" to the contrary. It makes no difference whether the advances be made before or after the power is given, so they are approved by the principal. And when the principal, as in this case, *expressly* gives the power, for the very purpose of providing the *means* to return the advances made by the agent, there would seem to be no doubt as to the irrevocable character of the power. 5 Cal. Rep., 469, Postin *v.* Rassotte.

If these views be correct, the plaintiff had an irrevocable authority to institute this suit; and this being so, the question arises under the proofs in this case, as to what amount were they entitled to recover. Had the plaintiffs the right, *against* the objection of the defendants and Marzaud & Co., to recover the full amount of the debt due from P. B. & Co., at the time this suit was commenced? or, had they the right to recover only so much as would be necessary, to pay the debt due from Marzaud & Co. to them?

It was shown by the defendants, that they paid Marzaud & Co. the sum of seven thousand francs, in December, 1852, upon the last instalment; and that Marzaud & Co., in January, 1853, formally revoked the power given to plaintiffs, in August, 1851, and positively instructed defendants to pay to Marzaud & Co. alone.

The creditor has not the right to assign the debt in parcels, and thus, by splitting up the cause of action, subject his debtor to the costs and expenses of more suits than the parties originally contemplated. But when the debtor himself does not object, no other party can object for him. The object of the assignment in this case, was to secure the plaintiffs, and that end is fully attained, if they are permitted to recover all that may be due to them. Although the power be irrevocable, it is only so to the extent of their interest, and the defendant had a right to pay to Marzaud & Co. all beyond the sum necessary to secure the plaintiffs. And Marzaud & Co. had the right to revoke the power, as to the excess beyond the claim of plaintiffs. And as the defendants have been notified of the revocation, and make no objection to it, but set it up in their answer, it is their duty, as well as their right, to see that the plaintiffs only recover judgment against them for the true amount due from Marzaud & Co.

In this case, the plaintiffs had judgment for the full amount of the last instalment, with interest, when it is almost certain that

their debt against Marzaud & Co. did not amount to so much, after properly appropriating the various payments made at different times. The loan of four thousand dollars drew five per cent. per month by express written agreement, afterwards fully ratified by Marzaud & Co. But there was no express written agreement as to the rate of interest upon the other advances made by plaintiffs, and they can only recover the legal interest of ten per cent. per annum.

With the view we have taken of this case, it will be necessary to remand the case, for the purpose of taking an account, so as to ascertain the amount for which the plaintiffs are entitled to take judgment. In taking the account, the payment made by Capt. Devaulx, December 31st, 1850, of two thousand and twenty-five dollars and sixty-six cents, should go to the credit of the loan of four thousand dollars; also, the proceeds of the cargo of coal, after deducting the actual costs of the voyage to and from Sydney, the necessary expense of keeping the coal in the harbor, and commissions on sales. The pledge of the cargo of coal to plaintiffs, to secure the loan of four thousand dollars, was ratified by Marzaud & Co., as appears from their letter to Dillon, December 28th, 1850.

There remains but one point undisposed of, which it is necessary to notice. The appeal in this case, was taken only from the judgment, and not from the judgment *and* the order overruling the motion for a new trial. It is insisted by the plaintiffs' counsel, that this Court will not review the facts of the case, unless the appeal be from the order refusing the new trial. This is well settled. But in this case, it is stipulated by the counsel of both parties, that as there was, in fact, a motion for a new trial made and overruled, and the appeal only taken from the judgment, this Court may consider the case as here upon appeal, both from the judgment and order, if this Court shall determine that defendants could appeal from the order, *after* having appealed from the judgment alone.

There can be no doubt as to the right of a party to appeal, *either* from the judgment or the order, or from *both*, at the same time. The time limited by the statute as to one, is different from that as to the other.

But can a party take *distinct and independent appeals ?* We think he may do so, provided he bring them up for determination at the *same time.* Taking distinct appeals may affect the question of costs. But, subject to this condition, we can see no error in permitting a party to take distinct appeals in the same case, provided no delay is thereby occasioned. As the point is a new one, we will not turn the appellants out of Court, but will tax them with the costs of this appeal. The stipulation was entered into at the hearing of this case. Had the appellants taken

their appeal from the order in time for the hearing, the judgment, as to costs, would have been different.

The cause is remanded to the District Court to take the account, and modify its judgment in accordance with this opinion.